UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIMBERLY J. MARTUCCI,

       Plaintiff,

      v.                         Case No:  2:17-cv-626-FtM-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## OPINION AND ORDER

Plaintiff, Kimberly J. Martucci, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful

employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If she meets this burden, she will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work.  *Id.* At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform her past relevant work, then she will not be found disabled.  *Id.*

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id.*  In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair

record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed applications for a period of disability and disability insurance benefits as well as Supplemental Security Income on April 16, 2014, alleging August 31, 2012, as disability onset date. (Tr. 134-35, 248, 250). Plaintiff's claims were denied initially on August 14, 2014, and upon reconsideration on November 18, 2014. (Tr. 167, 170, 175, 180). On August 4, 2016, administrative law judge ("ALJ") Michael Carr held an administrative hearing. (Tr. 42). On November 2, 2016, the ALJ issued a decision, finding that the Plaintiff was not disabled within the meaning of Social Security Act. (Tr. 20, 34). Plaintiff requested review of the decision and on September 18, 2017, the Appeals Council denied the Plaintiff's timely request for review. (Tr. 1). Plaintiff initiated the instant action by Complaint (Doc. 1) on November 15, 2017.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 31, 2012, the alleged onset date. (Tr. 25). At step two, the ALJ found that Plaintiff had a single severe impairment: fibromyalgia. (Tr. 25). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets

or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 28).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds." (Tr. 28). At step four, the ALJ found that Plaintiff is capable of performing past relevant as a deli cutter/slicer and as a waitress, as that job is generally performed, as such jobs do not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 32). The ALJ concluded that Plaintiff had not been under a disability since August 31, 2012, through the date of the decision, November 2, 2016. (Tr. 34).

## II. Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by finding that Plaintiff was capable of performing past relevant work as a deli cutter/slicer and waitress; (2) whether the ALJ erred by failing to properly evaluate Plaintiff's fibromyalgia; and (3) whether the ALJ erred by failing to perform a proper psychiatric review technique analysis. The Court will address each issue in turn.

### a) Whether the ALJ erred by finding that Plaintiff was capable of performing past relevant work as a deli cutter/slicer and waitress.

Plaintiff argues that the ALJ erred by finding that Plaintiff had past relevant work as a deli cutter/slicer as the record contains no evidence that Plaintiff performed this job at substantial gainful activity ("SGA") level or long enough to learn to do it. (Doc. 26 p. 9). Further, Plaintiff argues that the ALJ erred by finding that Plaintiff can perform the job of waitress as it is generally performed because her work as a waitress, as she actually performed it, was a composite job requiring substantial duties of more than one occupation and its physical requirements exceeded

the limitations in Plaintiff's RFC assessment. (Doc. 26 p. 10). In response, Defendant argues that Plaintiff's work as a waitress was not composite, but that she merely had some additional duties and demands not generally performed by other employers of waitresses. (Doc. 26 p. 16-17). Defendant does not challenge Plaintiff's arguments concerning the ALJ's finding that deli cutter/slicer is past relevant work, instead arguing that any error is harmless given that there is substantial evidence to support the ALJ's finding that Plaintiff can perform her past relevant work as a waitress. (Doc. 26 p. 17).

Plaintiff bears the burden of proving that she cannot perform her past relevant work either as she performed the work or as it is performed generally in the national economy. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991); *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986). An ALJ may rely on a VE's testimony to determine the demands of a claimant's former work and to determine whether the claimant can perform her past relevant work. *See* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); SSR 82-61, 1982 WL 31387; *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 884-85 (11th Cir. 2011).

Here, the Court begins by noting that Plaintiff is correct that the record contains no evidence that Plaintiff performed this job at SGA level. Thus, the ALJ failed to provide substantial evidence for the finding that Plaintiff has past relevant work as a deli cutter/slicer. The ALJ's error would be harmless, however, if substantial evidence supports the ALJ's determination that Plaintiff can return to past relevant work as a waitress. The Court turns to that consideration now.

At the administrative hearing, Plaintiff described that her job as waitress required her to come in 30-60 minutes before the shift in order to move chairs and tables to prepare for parties. (Tr. 78-79). Plaintiff further testified that she also had to help cooks to get ready for the day. (Tr. 79). Consistent with this testimony, Plaintiff described similar daily responsibilities in the Work

History Report. (Tr. 292). Plaintiff indicated that she frequently had to lift 25 pounds and lifted as much as 50 pounds, which involved moving five-gallon or bigger containers with food. (Tr. 79-80). Later in the hearing, Plaintiff's representative questioned the vocational expert concerning the jobs duties Plaintiff was expected to perform as a waitress:

> [Representative:] Ms. Roche, does the DOT description for the job of waitress incorporate duties such as stocking and cleaning?

> [VE:] No, I don't see it.

> [Representative:] So, if the claimant as she described the job was responsible for performing stocking and cleaning would there not be additional DOT titles necessary to describe the work as she actually performed it?

> [VE:] No, I don't know of one. I do not know of one. Again with this employer—

> [Representative:] You don't know of any jobs that involve stocking?

> [VE:] –that was specific to her job as a waitress. She has indicated that she performed it at the medium level. She might go to the next restaurant and there would be no stocking, there would be no cleaning of a restroom. There would be cleaning maybe, if maybe of tables but there are bus boys for that and bus boys to do the heavy lifting, etcetera, a dining room attendant, per se.

> [Representative:] I'm not talking about other jobs that she perform [sic]. I'm talking about the job that she did perform. Does a DOT description for waitress accurately incorporate that description that she has given which included stocking and cleaning and you have said that it does not—

> [VE:] It does not.

> [Representative:] So [INAUDIBLE] get a DOT code—

> [VE:] It does not.

> [Representative:] You said that stocking and cleaning is not part of the waitress description in the DOT.

[VE:] Correct.

[Representative:] So if she performed it then how can that job, how can that DOT description accurately reflect what she performed if part of the job duties she described are not in that DOT description? That's what I don't understand.

[VE:] I've been over this. I guess, you've asked and I've responded. I don't know what to say, sir.

[ALJ:] And I'm going to jump in, Ms. Roche, the way that I heard you respond is that these were, you said, performed informally. These are things that there are other employees to do that this was a matter of getting ready for the day. I heard you made a reference to formal versus informal. Is that relevant in terms of how you looked at this?

[VE:] Yes, there are different, different employers will have the waitress do different things. Every single waitress does not do the exact same thing that the one at the next employer and then there is also the type of setting. Is it a country club? Is it a bar? Is it a casual dining? Is it a banquet so there are so many variabilities, and you know, if you wrote all of those on a waitress we'd have a whole book of them probably but the DOT does not describe what she says that she did as performed. I agree with that.

[Representative:] Which is my point.

[ALJ:] And, Ms. Roche, is your testimony consistent, additional testimony consistent with the DOT?

[VE:] Yes.

(Tr. 83). The VE also stated that "[s]he might go to the next restaurant and there would be no stocking, there would be no cleaning of a restroom." (Tr. 84).

In his decision, the ALJ addressed the issue of whether Plaintiff's work as a waitress was composite work as follows:

> At the hearing, the representative questioned the vocational expert extensively regarding the claimant's past work as a waitress. The representative suggested that because the claimant performed some duties that are not included in the Dictionary of Occupational Titles (DOT) definition of the waitress position, the job was therefore composite and

required another position to fully describe her past work. The undersigned allowed the representative to follow his line of questioning for over twelve minutes nearly a fifth of the entire hearing. The representative also had the opportunity to further question the claimant about her past work and clarify her job responsibilities. In response to the representative's questioning, the vocational expert repeatedly stated that the duties the claimant performed beyond those included in the DOT definition of the waitress position are informal but regular expectations of the job that do not typically require greater than light exertion. The vocational expert testified that the additional duties do not constitute a composite job. The undersigned found the vocational expert's testimony persuasive, as the claimant's additional duties did not appear to be major tasks associated with her regular job requirements. Rather, they were ancillary duties that a waitress could reasonably be expected to perform, as the vocational expert indicated. As such, the undersigned finds that the claimant's duties as a waitress do not support the finding that she performed a composite job.

(Tr. 32-33).

The Court finds no error in the ALJ's determination that Plaintiff's work as a waitress was not composite work. A composite job is "one that has significant elements of two or more occupations and, as such, has no counterpart in the DOT." *Paxton v. Colvin*, 2013 WL 1909609, *4 (M.D. Fla. May 8, 2013). However, the fact that a job requires more duties than set out in the DOT does not render it composite. SSR 82-61 explains that "It is understood that some individual jobs may require somewhat more or less exertion than the DOT description. A former job performed by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." SSR 82-61, 1982 WL 31387. The "regulations require that the claimant not be able to perform his past kind of work, not that he merely be unable to perform a specific job he held in the past." Jackson, 801 F.2d at 1293; see also Klawinski v. Comm'r of Soc. Sec., 391 F. App'x 772, 775 (11th Cir. 2010) (finding claimant did not have composite job even though she performed additional duties not listed in DOT description of secretary job).

While Plaintiff contends she performed the job of a waitress as a composite job, in fact her description of the job and the explanation provided by the VE at the hearing show that Plaintiff merely had some additional duties and demands not generally required by other employers of waitresses. Thus, although Plaintiff could not perform her past relevant work as a waitress as she actually performed it because she performed some additional, informal duties that are outside of the limitations included in the RFC, Plaintiff could perform the job of a waitress as it is generally performed in the national economy and therefore the ALJ properly found she could do her past work and was not disabled. See 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

**b) Whether the ALJ erred by failing to properly evaluate Plaintiff's fibromyalgia.**

Plaintiff argues that the ALJ erred by overemphasizing the lack of objective evidence in evaluating Plaintiff's fibromyalgia. (Doc. 26 p. 21). Plaintiff contends that because her disability is based on fibromyalgia, there would not be any evidence to support the disability. (Doc. 26 p. 21). Further, Plaintiff argues that the ALJ erred by improperly rejecting the opinion of Dr. Shuster on the grounds that it lacked objective evidence. (Doc. 26 p. 22). In response, Defendant argues that the ALJ properly evaluated Plaintiff's severe impairment of fibromyalgia in assessing the RFC and provided good cause for rejecting the opinion of Dr. Shuster. (Doc. 26 p. 23).

The Eleventh Circuit has recognized that fibromyalgia "often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms," and that the "hallmark" of fibromyalgia is therefore "a lack of objective evidence." *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir.2005) (per curiam). The lack of objective clinical findings is, at least in the case of fibromyalgia, therefore insufficient alone to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations. *See Green–Younger v. Barnhart,* 335 F.3d 99, 105–08 (holding that because fibromyalgia is "a disease that eludes [objective]

measurement," ALJ improperly discredited treating physician's disability determination based upon lack of objective evidence). *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 63–64 (11th Cir. 2010).

In this case, the Court finds no error in the ALJ's analysis of Plaintiff's fibromyalgia. The ALJ considered Plaintiff's fibromyalgia, determined that it was a severe impairment, and found that it limited Plaintiff to light work with only occasional stooping, balancing, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes and scaffolds. (Tr. 28). The ALJ explained that Plaintiff's complaints were inconsistent with the documentation of her condition in the treatment notes. (Tr. 29-30). The ALJ explained that Plaintiff was diagnosed with fibromyalgia in 2010 and at exams in early 2012, Plaintiff demonstrated good overall strength and normal gait, but was very tender to the touch over her whole body. (Tr. 630-31). In February 2012, Plaintiff had generalized musculoskeletal pain, but was otherwise normal and later in 2012 she did not exhibit tenderness on examination. (Tr. 445, 454, 459). As Defendant notes, even Plaintiff's complaints of generalized pain are not reflected in the medical records from early 2012 to mid-2013. (Tr. 515, 517, 520, 523, 526). In August and November 2013, Dr. Shuster observed tender points and diffuse extremity pain and weakness, but a year later, despite continued complaints of pain, Plaintiff was increasing her at-home exercises. (Tr. 558). From 2014 through 2016, Plaintiff demonstrated only slightly reduced muscle tone in all extremities during range of motion, but her grip strength was normal and she had full range of musculoskeletal motion. (Tr. 560, 584, 588, 591, 594, 600, 603, 605, 609). The ALJ found these treatment notes were inconsistent with Plaintiff's complaints that she could not lift even a gallon of milk. (Tr. 30). Plaintiff also reported at the hearing that she could do some household chores, just slowly and she liked to take walks to the duck pond behind her house. (Tr. 62-63). Thus, Plaintiff's activities of daily living also contradicted her complaints that

she could only sit in a chair all day long. *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, (11th Cir. 2014) (affirming ALJ's finding of no disability despite diagnosis of fibromyalgia and complaints of inability to do anything); *Conner v. Astrue*, 415 F. App'x 992, 994, 996 (11th Cir. 2011) (affirming ALJ's finding of no disability based in part on claimant's activities of daily living, which included visiting friends, taking care of animals, and surfing the internet); *Hennes v. Comm'r of Soc. Sec.*, 130 F. App'x 343, 348-49 (11th Cir. 2005) (claimant's testimony that she could shop for groceries, cook meals, and do chores belied her allegations of disabling fibromyalgia).

Further, the Court finds no error in the ALJ's decision to accord little weight to Dr. Shuster's opinion. The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when the: "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In his decision, the ALJ explained the weight he accorded Dr. Shuster's opinion as follows:

> In June 2012, Anna Shuster, D.O. stated that the claimant had been disabled since March 2010 (Exhibit B15F/3). Dr. Shuster opined that the claimant could occasionally lift and/or carry less than 10 pounds, stand and/or walk for less than two hours in an eight-hour day, and sit for less than 30 minutes in an eight-hour day (Exhibit B15F/4/9). She indicated the claimant could never climb, balance, stoop, or crouch, and she could only occasionally kneel or crawl (Exhibit B15F/4/9/10). Dr. Shuster stated the claimant would need to take a five to ten-minute break for every 30 minutes of work, and that she would need to lie down for 15 to 20 minutes every two to three hours (Exhibit B15F/4/5/9). The doctor also opined the claimant would only occasionally be able to understand and carry out simple instructions or use judgment because of pain, and that she would have minor limitations in remembering simple instructions and dealing with workplace changes (Exhibit B15F/5). Dr. Shuster opined the

claimant had manipulative limitations and that she would be absent from work more than four days per month (Exhibit B15F/8/10). Dr. Shuster's opinion is outdated and inconsistent with her own treatment records with regard to the claimant's physical condition leading up to and after the date the claimant was last insured. In 2011, the claimant was physically normal during a consultative examination, and Dr. Shuster herself stated the claimant's fibromyalgia was under control with medications (Exhibits B3F/3 and BSF/26/34). Physical examinations showed some generalized tenderness in early 2012, but Dr. Shuster's examination records from between mid-2012 and late 2013 did not demonstrate objective findings that would support the opinion above (Exhibits BSF/9/18/23 and BSF/19/21/24/27/30). Dr. Shuster's more recent medical records show that the claimant has normal grip strength and full range of musculoskeletal motion, which is inconsistent with the manipulative limitations she suggested in her opinion (Exhibits B10F/10 and B12F/4/8/1 l/14/20/23/25/29). Furthermore, the claimant personally stated she could sit for two hours at a time, which is inconsistent with Dr. Shuster' s conclusion that she could sit for less than 30 minutes in an eight-hour day (Exhibit B13E/2). Because of the several inconsistencies between Dr. Shuster's opinion and her objective treatment records, the undersigned gave her opinion little weight during the residual functional capacity finding.

(Tr. 31-32).

The ALJ properly provided good reasons, supported by substantial evidence, for giving little weight to Dr. Shuster's 2012 opinion. (Tr. 31). The ALJ reasoned that Dr. Shuster's opinion was outdated and inconsistent with her own treatment notes and some of the opinions were inconsistent with Plaintiff's own reports of her abilities. (Tr. 31). See 20 C.F.R. §§ 404.1527, 416.927. The ALJ explained that in 2011, Dr. Shuster's treatment notes show a normal physical examination and a note by Dr. Shuster that Plaintiff's fibromyalgia was under control. (Tr. 427, 522, 530). Physical examinations showed some generalized tenderness in early 2012, but Dr. Shuster's examination records from between mid-2012 to late 2013 did not demonstrate objective findings that would support the extent of limitations in her June 2012 opinion. (Tr. 445, 454-59, 515, 517, 520,523, 526). Dr. Shuster's more recent treatment notes generally show the same findings and reports at each visit and do not demonstrate a worsening of her condition (Tr. 583-

609). The treatment notes show a normal grip strength and full range of musculoskeletal motion, which is inconsistent with the manipulative limitations she included in her opinion (Tr. 515).

The ALJ did not reject Plaintiff's diagnosis of fibromyalgia on the basis that there was a lack of objective evidence, but found that Plaintiff's fibromyalgia was not as limiting as alleged. Plaintiff has failed to demonstrate that the ALJ improperly evaluated her severe impairment of fibromyalgia. Accordingly, the Court will not disturb the ALJ's analysis of fibromyalgia on review.

### c) **Whether the ALJ erred by failing to perform a proper psychiatric review technique analysis.**

Plaintiff argues that the ALJ failed to conduct a proper psychiatric review technique analysis because the ALJ relied on a consultation that pre-dates Plaintiff's alleged disability date to determine that Plaintiff had only mild limitations in the areas of concentration, persistence, and pace. (Doc. 26 p. 27). Plaintiff argues that the ALJ failed to acknowledge that Plaintiff reported that it takes her all day to finish what she has started, can only pay attention for 5 minutes, after which her mind wanders, and she has to re-read written instructions. (Doc. 26 p. 27). Further, Plaintiff argues that the ALJ failed to consult medical records dated after Plaintiff's alleged onset date that indicate difficulty concentrating and an inability to concentrate. (Doc. 26 p. 27 citing Tr. 587, 589, 590, 592, 593). In response, Defendant argues that the ALJ determined Plaintiff had mild limitations in concentration, persistence and pace based on a totality of medical evidence and not just based on one consultative examination. (Doc. 26 p. 28).

Under 20 C.F.R. § 416.920a, an ALJ is required to utilize the "special technique" dictated by a psychiatric review technique form ("PTRF") when evaluating mental impairments. *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005). The technique requires evaluation of four separate function areas on a four-point scale as to how the impairment affects the claimant: "activities of

daily living; social functioning; concentration, persistence or pace; and episodes of decomposition." *Id.* The ALJ then incorporates the results into his findings and conclusions. *Id.* at 1213-14.

In his decision, the ALJ explained his findings in the third functional area as follows:

> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitations. She alleged a very short attention span of five minutes, but during a consultative examination, she demonstrated normal attention, concentration, and memory (Exhibit B13E/5). She follows instructions adequately and can handle changes in routine (Exhibit B13E/5/6). The claimant indicated she could handle monetary accounts if she kept a chart and kept things in order, and she testified she could handle a checking account (Exhibit B13E/3). There is insufficient objective evidence in the record to corroborate the claimant's alleged concentration problems. Based on the overall record, the undersigned finds that the claimant's mental impairments cause no more than mild limitations in maintaining concentration, persistence, or pace.

(Tr. 27).

In this case, the Court finds that the ALJ's finding in the third functional area is not supported by substantial evidence. The ALJ's analysis makes clear that the ALJ heavily considered the consultative examination in reaching his finding. As Plaintiff notes and Defendant does not challenge, this consultative examination occurred in December 2010, before Plaintiff's allege onset date of August 2012. The ALJ does not address whether this examination applies to the time period after Plaintiff's alleged onset date. Contrary to the consultative examination, Plaintiff's medical records document difficulty concentrating and an inability to concentrate. (Tr. 587, 589, 590, 592, 593). The ALJ fails to address this evidence.

On remand, the ALJ shall re-evaluate Plaintiff's functioning in the category concentration, persistence or pace taking into consideration the medical record documenting Plaintiff's difficulties in concentration.

**III.     Conclusion**

The decision of the Commissioner is **REVERSED AND REMANDED.**  The Clerk of the

Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties